DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant, Franklin T. Varney, Jr., appeals his arson conviction in the Hocking County Court of Common Pleas. Appellant assigns as error that: 1) the jury's verdict was against the manifest weight of the evidence; 2) the trial court denied him a fair trial by allowing certain witness testimony; 3) there was prosecutorial misconduct, and; 4) he had ineffective assistance of counsel.
 {¶ 2} Because there is no evidence the jury lost its way and created a manifest miscarriage of justice, Appellant's first assignment of error is *Page 2 
without merit. Because Appellant stipulated that the witness in question was qualified to testify as an expert and because, under Evid.R. 704, the expert was able to give his opinion as to the ultimate issue, Appellant's second assignment of error is without merit. Because we find no evidence of prosecutorial misconduct in the record below, his third assignment of error is also without merit. Finally, because he is unable to show that, but for his counsel's alleged errors, the outcome of the trial would have been different, his fourth assignment of error also fails. Accordingly, each of Appellant's assignments of error are overruled and the decision of the trial court is affirmed.
 I. Facts {¶ 3} Appellant's family, ("the Varneys") owns property located adjacent to farmland owned by Lawrence and Marcia Meyers ("the Myers"). Over time, an acrimonious relationship developed between the two families. Part of the rift stemmed from Appellant's father claiming and utilizing eighteen acres of land that, in fact, belonged to the Myers. As a result of this appropriation, Appellant's father was criminally convicted, placed on probation and ordered to pay restitution to the Myers. On another occasion, Lawrence Myers was threatened with a gun by a member of the Varneys, for which that person was placed on probation. The Myers testified that there were many other incidents of harassment or intimidation by the Varneys, *Page 3 
including intentional damage to Marcia Myers vehicle, yelled obscenities, and an attempt to run Marcia off the road.
 {¶ 4} In August of 2004, Appellant and the Myers' son, Phil, almost collided while driving. Phil testified that Appellant got out of his car, yelled obscenities at him and tried to engage him in a physical altercation. Before driving off, Appellant told Phil that "you and your old man have it coming." Phil reported this incident to the sheriffs department and, partially as a result of the report, Appellant was called in for a parole violation hearing.
 {¶ 5} On the night of October 16, 2004, a fire destroyed a barn complex and adjacent buildings belonging to the Myers. The fire also destroyed three thousand bales of hay and various farming equipment which had been stored in the barn. Total damages were approximately $75,000. The fire marshal's investigator ruled out a number of natural causes for the fire, but was unable to definitively determine its origin.
 {¶ 6} Approximately two years later, the Myers received a phone call from Gregory Fessler, a former friend of Appellant. Fessler stated Appellant told him that he was responsible for the fire. As a result of this information, the fire investigation was reopened. During the investigation, two additional witnesses, Appellant's brother, Josh Varney, and Josh's girlfriend, Samantha Nelson, also stated that Appellant had admitted to *Page 4 
starting the fire. Subsequently, Appellant was indicted for arson in violation of R.C. 2909.03(A)(1).
 {¶ 7} The matter proceeded to trial and, though one of the witnesses, Josh Varney, recanted his previous testimony, the jury found Appellant guilty and the court sentenced him to seventeen months of imprisonment. On March 9, 2007, Appellant filed the current appeal.
 II. Assignments of Error {¶ 8} 1. THE VERDICT OF THE JURY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 9} 2. THE TRIAL COURT ERRED IN VARIOUS RESPECTS AS HEREINAFTER SET FORTH AND THEREBY DEPRIVED THE DEFENDANT OF A FAIR TRIAL.
 {¶ 10} 3. THERE WAS PROSECUTORIAL MISCONDUCT.
 {¶ 11} 4. IT WAS INEFFECTIVE ASSISTANCE OF COUNSEL FOR DEFENSE COUNSEL. [SIC]
 III. First Assignment of Error {¶ 12} In his first assignment of error, Appellant contends his conviction is against the manifest weight of the evidence. When reviewing such claims, appellate courts should weigh the evidence and all reasonable inferences and also consider witness testimony. State v.Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 NE.2d 814. The reviewing court sits, essentially, as a "thirteenth juror" and may disagree with the fact finder's conclusions regarding conflicting testimony during trial. State v. *Page 5 Thompkms, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541
"However, this review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact."Garrow at 371. A reviewing court should only reverse the conviction if it appears that the fact finder, in resolving evidentiary conflicts, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thomphns (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. After reviewing the evidence in the record below and applying this standard of review, we are unable to say the jury's verdict was against the manifest weight of the evidence.
 {¶ 13} The jury heard evidence that there was a long-standing, acrimonious relationship between the Varneys and the Myers. They heard testimony that the Varneys subjected the Myers to numerous instances of threatening and intimidating behavior. Only a few weeks before the fire, Phil Myers testified that Appellant directly threatened him and his father by stating "you and your old man have it coming." Phil Myers reported the incident to the authorities and, as a result, Appellant suffered legal consequences. The jury could reasonable infer from this evidence that Appellant had a motive to start the fire. *Page 6 
 {¶ 14} More importantly, the jury heard the testimony of Greg Fessler, Samantha Nelson and Josh Varney, indicating that Appellant had admitted to the arson. Fessler lived with Appellant for a short time. During this period, Fessler testified that Appellant told him he poured gas from a small container onto the Myers barn, lit it, and watched it burn until he heard sirens. Appellant also told Fessler that a friend, Shane Tinch, was with him during the arson. Samantha Nelson testified that, on a separate occasion, Appellant also told her and Appellant's brother, Josh Varney, that he committed the arson. Nelson testified that Appellant told her he burned the barn because of his anger with the Myers. The details Appellant recounted to Nelson were consistent with those given to Fessler. Further, Shane Tinch was present during Appellant's confession to Nelson and Nelson stated that Tinch did not contradict Appellant, he simply smiled while Appellant recounted the events. During trial, Josh Varney recanted his previous testimony, made both to investigators and the grand jury, regarding his brother's confession. He stated he could not remember what he had said because he was on drugs. However, the jury heard evidence from multiple witnesses that when Josh spoke with investigators and the grand jury, his account of Appellant's confession matched that of Nelson and there was no sign whatsoever that he was under the influence or incapacitated. Further, *Page 7 
the jury heard evidence that Josh had both been threatened and bribed into recanting his prior testimony.
 {¶ 15} The jury also heard evidence that the fire did not occur naturally. Fire investigator Henry Barber testified that various accidental ignition sources, including lightning, faulty electrical wiring, brush fires and spontaneous hay combustion, were not indicated. Barber testified that, because of the lack of a non-natural source for the fire, arson was strongly suggested. Finally, Barber testified that the accounts given by Fessler and Nelson, as to how Appellant set the fire, were consistent with his findings at the fire scene.
 {¶ 16} In light of this evidence, and keeping in mind that witness credibility is primarily for the trier of fact, we are unable to say the jury clearly lost its way and created a miscarriage of justice in finding Appellant guilty. Accordingly, the verdict was not against the manifest weight of the evidence and Appellant's first assignment of error is overruled.
 IV. Second Assignment of Error {¶ 17} In his second assignment of error, Appellant contends the trial court deprived him of a fair trial. This argument is founded entirely on the alleged improper testimony of the fire investigator, Henry Barber. Appellant argues first that the trial court improperly allowed Barber to testify as an expert witness when the prosecution did not qualify him as such and, *Page 8 
secondly, that the trial court, over Appellant's objection, allowed Barber to state his opinion that Appellant initiated the fire.
 {¶ 18} We first note the proper standard of review in this instance. "The determination of the admissibility of expert testimony is within the discretion of the trial court. Evid.R. 104(A). Such decisions will not be disturbed absent abuse of discretion." Valentine v. Conrad,110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, at ¶ 9. "`Abuse of discretion' suggests unreasonableness, arbitrariness, or unconscionability. Without those elements, it is not the role of this court to substitute its judgment for that of the trial court." Id.
 {¶ 19} Appellant's first argument regarding this assignment of error fails because, as Appellee correctly points out, the parties agreed to Barber's ability to testify as an expert. Appellant's counsel stated during trial that "I have no objection to [Barber] giving his opinion in his area of expertise, you know, in the investigation and the science behind it." Counsel also stated that "I have no objection to scientific opinion about everything else he testified to. But his opinion about who started the fire, that's the jury's province and responsibility and not his." As such, Barber's qualifications to testify as an expert was stipulated by the parties. *Page 9 
 {¶ 20} Appellant's second argument in this assignment of error is that Barber should not have been allowed to state that, in his opinion, Appellant started the fire. After he was extensively questioned about his investigation of the fire, Barber was asked if he had an opinion as to how the fire occurred. He replied: "In light of all the information that I have received, it is my opinion that this fire was initiated by Franklin T. Varney, Jr." Appellant's counsel objected to the statement on the basis that "the answer he gave was — is the ultimate conclusion is [sic] for the jury." The trial court overruled the objection, but later instructed the jury with the following: "Ladies and gentlemen, I wanted to point out to you that the testimony of Mr. Barber in regard to the ultimate issue of the case is whether or not this defendant committed this arson is simply his opinion and it's based upon his investigation. That's not to take the place — you can't just say, all right, he said it, that's it. That's your determination. You have the same determination to make. And so I just wanted to caution you in that respect."
 {¶ 21} Evid.R. 704 states: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." In the case sub judice, Henry Barber testified that, based upon all the evidence he had *Page 10 
considered, Appellant was responsible for the fire. This type of testimony is specifically allowable under Evid.R. 704. In light of this, and the fact that the trial court cautioned the jury about substituting Barber's conclusions for their own, it was not an abuse of discretion to allow Barber to testify as to his opinion. Appellant's second assignment of error is overruled.
 V. Third Assignment of Error {¶ 22} As his third assignment of error, Appellant alleges prosecutorial misconduct. Again, this argument is founded upon the testimony of the fire investigator, Henry Barber. Appellant states that, in failing to qualify Barber as an expert and by asking him his opinion as to how the fire occurred, the prosecution engaged in misconduct.
 {¶ 23} When reviewing a claim of prosecutorial misconduct, the relevant inquiry for an appellate court is whether the prosecutor's remarks actually were improper and, if they were, whether any of defendant's substantial rights was adversely affected. State v.Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. Further, reversal is warranted only if the prosecutorial misconduct "permeates the entire atmosphere of the trial." United States v. Warner (C.A.6, 1992), 955 F.2d 441, 456; see, also, State v. Tumbleson (1995),105 Ohio App.3d 693, 664 N.E.2d 1318.
 {¶ 24} After reviewing the entire record below, we find it devoid of any evidence of prosecutorial misconduct. There is simply nothing in *Page 11 
Appellee's questions to Barber that can be construed as such. As already stated, the parties agreed that Barber was qualified to testify as an expert witness regarding his investigation. Appellant's only objection to the testimony was that Barber gave his opinion that Appellant was responsible for the fire. Obviously, this question, allowable under Evid.R. 704, did not amount to misconduct. Accordingly, Appellant's third assignment of error is overruled.
 VI. Fourth Assignment of Error {¶ 25} In his fourth assignment of error, Appellant contends his conviction should be overturned because of ineffective assistance of counsel. Appellant lists a number of alleged instances: failure to object to certain leading questions of the prosecution; failure to object to hearsay; inept cross-examination; failure to object to speculation; failure to rebut or provide expert testimony; general failures to object, and; general ineffective assistance of counsel.
 {¶ 26} In order to establish ineffective assistance of counsel, an appellant must show that counsel's representation was deficient as well as prejudicial. In re Sturm, 4th Dist. No. 05CA35, 2006-Ohio-7101, at ¶ 77. Deficient representation means counsel's performance was below an objective standard of reasonableness. Id. To show prejudice, an appellant *Page 12 
must show it is reasonably probable that, except for the errors of his counsel, the proceeding's outcome would have been different. Id.
 {¶ 27} We have stated that "[a] reviewing court when addressing an ineffective assistance of counsel claim, should not consider what, in hindsight, may have been a more appropriate course of action." State v.Wright, 4th Dist. No. 00CA39, 2001-Ohio-2473, at *22. Instead, reviewing courts must be highly deferential. Id. Further, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy." Id., citing Strickland v. Washington (1984), 466 U.S. 668, 689,104 S.Ct. 2052.
 {¶ 28} Despite Appellant's list of alleged instances of ineffective assistance, he specifically argues only two: 1) failure to object to the testimony of Harry Barber as an expert witness, and; 2) failure to object to hearsay. We first address the expert witness question.
 {¶ 29} Appellant asserts that, because Appellant's counsel did not object to Barber as an expert witness, it is unknown whether Barber had the qualifications necessary to state his opinions. Barber testified that he was an investigator for the fire marshal's office and had been in that position for *Page 13 
twenty years. Further, Barber told the court that "I have been in other cases in the County of Logan — or Hocking, as well as other counties, qualified as an expert witness and able to give my opinion." Further, Appellant's counsel had access to Barber's report and qualifications before trial. Counsel could have reasonably concluded that objecting to Barber as an expert witness would be futile. In light of this, we do not find that counsel's failure to challenge Barber's qualifications as an expert constituted deficient representation.
 {¶ 30} Similarly, we do not find that counsel's failure to object to certain instances of hearsay rises to the level of ineffective assistance. The specific instances cited by Appellant are: Lawrence Myers' testimony that Josh Varney told him his father had threatened to kill him; Phil Myers' testimony that Appellant's probation had expired, that he hadn't paid fines and that he hadn't attended a driver's intervention class, and; Phil Myers' testimony that Appellant had committed a probation violation, that he had been driving without a license and that he had an encounter with the highway patrol. First, we note the relevance of most of these statements are questionable. Further, to the extent these statements may have constituted hearsay, we find the failure to object to them was harmless error. *Page 14 
 {¶ 31} Finally, none of Appellant's arguments demonstrate that he was prejudiced by counsel's alleged failings. Because of the abundance of other evidence presented at trial, especially the testimony regarding Appellant's multiple confessions, Appellant is unable to show it is probable, but for counsel's alleged errors, the trial's outcome would have been different. Accordingly, Appellant's fourth and final assignment of error is overruled.
 VII. Conclusion {¶ 32} After reviewing the complete record below and weighing all the evidence, including witness testimony, we conclude the jury's verdict was not against the manifest weight of the evidence. Further, we find that the trial court did not deprive Appellant of his right to a fair trial by allowing the expert testimony of the fire investigator. We also find there was no evidence of prosecutorial misconduct in questioning the expert witness. Finally, because Appellant is unable to demonstrate that his counsel's actions were both deficient and prejudicial, we find Appellant did not suffer from ineffective assistance of counsel. Accordingly, we overrule each of Appellant's assignments of error and affirm the decision of the trial court.
 JUDGMENT AFFIRMED. *Page 15 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment in Opinion as to Assignments of Error I, III, and IV, and Concur in Judgment Only as to Assignment of Error II. *Page 1