OPINION
{¶ 1} Defendant-appellant, Jorge Olvera-Guillen, appeals his convictions in the Butler County Court of Common Pleas for rape and domestic violence. We affirm.
 {¶ 2} Appellant and his girlfriend are illegal aliens from Mexico who have lived in *Page 2 
the United States together for several years. The couple live with their three-year-old daughter, the girlfriend's son from a previous relationship and appellant's brother. Appellant was the manager at Margarita's Mexican Restaurant near Cincinnati Mills Mall. At approximately midnight on December 18, 2006, appellant's girlfriend was returning to the Cincinnati area from her parent's home in Lexington, Kentucky accompanied by her two children and appellant's brother. Appellant was hosting a Christmas party at the restaurant for his employees and called his girlfriend from the party. According to the girlfriend, appellant was angry and sounded as if he had been drinking. Appellant implied that he believed she had engaged in sexual relations with his brother and requested that she come to the party. Shortly after she arrived, appellant and his girlfriend went into the kitchen of the restaurant and began arguing. Appellant's girlfriend testified that appellant grabbed her by her ear and hair, threatened her, called her names, accused her of infidelity, and broke her cell phone by throwing it on the floor. Appellant's girlfriend left the restaurant and went to the couple's apartment in Fairfield.
 {¶ 3} Appellant arrived at the apartment around 3:00 a.m. His girlfriend was sleeping in their bedroom with her two children. According to the girlfriend, appellant removed his clothes, ripped off her blouse, pulled her pants down, and engaged in forcible sexual intercourse with her. She claimed that, while forcefully penetrating her, appellant pulled her hair, bit her and asked "why does that hurt? How about me pulling your hair. I don't believe it hurts. You're a slut." He also bit her neck. She testified that he asked her if she wanted him to stop, but she replied "no," thinking that he would only hurt her more if she told him to stop. When finished, appellant threatened that if she went to the police, he would put drugs in her car so that she would be arrested and *Page 3 
deported as an illegal alien or he would pay $10,000 to make her disappear.
 {¶ 4} Appellant's girlfriend further testified that the following morning appellant grabbed her hair again and engaged in anal intercourse with her. She stated that it was painful and she began to scream, but he put his hand over her mouth so the children would not wake up. When finished, he left for work in her car because the registration on his vehicle had expired. She called off work that day. According to appellant's girlfriend, that evening, while the children were watching a video, appellant raped her again. She said nothing and did not argue or resist because she did not want him to hit or insult her again.
 {¶ 5} On December 19, she went to work at the Forest Park Chipotle. Her supervisor noticed scratches and bruising on her body and called the Fairfield Police to report the matter. Investigating officers obtained a statement from her, took pictures and transported her to Mercy Hospital for a sexual assault examination.
 {¶ 6} Appellant was arrested on an initial charge of domestic violence. Upon waiver of his Miranda rights, appellant denied raping his girlfriend or causing any injuries. Appellant admitted arguing with her, but claimed the acts were consensual "make-up" sex.
 {¶ 7} Appellant was charged with one count of rape in violation of R.C. 2907.02(A)(2) and one count of domestic violence in violation of R.C. 2919.25(A). Following a jury trial, appellant was found guilty as charged. Appellant was classified as a sexually oriented offender and sentenced to a prison term of seven years for rape and 180 days for domestic violence, to be served concurrently. Appellant timely appeals, raising three assignments of error. *Page 4 
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE JURY VERDICT WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} In his first assignment of error, appellant claims that his convictions are against both the sufficiency and manifest weight of the evidence. However, appellant's argument only attacks the credibility of the evidence. Appellant argues that the jury clearly lost its way in finding the testimony of his girlfriend credible. Evaluation of witness credibility is not proper on review for evidentiary sufficiency.State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79, citingState v. Waddy (1992), 63 Ohio St.3d 424. When deciding a sufficiency of the evidence issue, a reviewing court will not substitute its evaluation of witness credibility for that of the jury. State v. Williams (1996),73 Ohio St.3d 153, 165. Accordingly, appellant's assignment of error is limited to a review of the manifest weight of the evidence.
 {¶ 11} Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other; weight is not a question of mathematics, but depends on its effect in inducing belief. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A court considering whether a conviction was against the manifest weight of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. State v.Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39. The question is "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." Id.; State v. Blanton, Madison App. No. CA2005-04-016, 2006-Ohio-1785, ¶ 7. *Page 5 
 {¶ 12} R.C. 2907.02(A)(2) provides, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 13} Appellant contends that the sexual acts were consensual and the jury lost its way in convicting him of rape. Specifically, appellant claims that his version of the events is truthful and his girlfriend's testimony is not credible.
 {¶ 14} Appellant's girlfriend testified that, after engaging in a heated argument at the restaurant, appellant raped her when he arrived home. She further stated that he raped her again on two other occasions that day. She stated that she did not thwart the activity due to the previous threats he made against her and her status as an illegal alien. The sexual assault examiner observed that the victim had a bite on her neck, scratches and bruises were visible on the neck, arm and thigh, redness was observed in the vaginal area along with extensive redness and swelling inside on the cervix.
 {¶ 15} The jury was in a better position to view the witnesses, observe their demeanor, and assess their credibility, and was free to believe or disbelieve all, part or none of the testimony of the witnesses at trial. State v. Wood, Preble App. No. CA2005-11-081,2006-Ohio-3781, ¶ 98; State v. Nichols (1993), 85 Ohio App.3d 65, 76;State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. After reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that the jury clearly lost its way and that appellant's convictions must be reversed. Accordingly, we find appellant's conviction is not against the manifest weight of the evidence. Appellant's first assignment of error is *Page 6 
therefore overruled.
 {¶ 16} Assignment of Error No. 2:
 {¶ 17} "THE TRIAL COURT ERRED IN FAILING TO EXCLUDE EVIDENCE UNDER EVID.R. 403(A)."
 {¶ 18} In his second assignment of error, appellant argues the trial court erred by admitting evidence of previous bad acts in violation of Evid. R. 403(A). The testimony in question involved an incident that occurred around August 1, 2006. Appellant's girlfriend testified that, during the previous occasion, appellant became angry when she refused to have sex with him in a restaurant dining room. Appellant threw her to the floor, tried to hit her, held a knife to her throat, and threatened to destroy her life. Appellant argues the trial court improperly allowed the evidence of this previous incident.
 {¶ 19} A trial court's decision to admit or exclude evidence will not be reversed by a reviewing court absent an abuse of discretion.State v. Craft, Butler App. No. CA2006-06-145, 2007-Ohio-4116, ¶ 48. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.
 {¶ 20} Generally, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Evid. R. 404(B).
 {¶ 21} Evid. R. 403(A) provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of *Page 7 
confusion of the issues, or of misleading the jury."
 {¶ 22} Appellant urges that admission of the testimony was improper because it was elicited merely for the purpose of proving that he previously abused his girlfriend and was acting in conformity therewith. Additionally, appellant argues that no exception for allowing the evidence is enumerated in Evid. R. 404(B).
 {¶ 23} The trial court in this case noted that the evidence was not being offered by the prosecution for character purposes and provided a limiting instruction to the jury. The court recognized that the evidence was offered to show why appellant's girlfriend did not prevent him from sexually assaulting her. We find no abuse by the trial court. Further, we find that the concerns expressed in Evid. R. 403(A) do not substantially outweigh the probative value of the testimony. The testimony was offered for non-character purposes consistent with Evid. R. 404(B) as it was probative of the victim's state of mind during the alleged sexual assaults. Appellant's second assignment of error is overruled.
 {¶ 24} Assignment of Error No. 3:
 {¶ 25} "THE MISCONDUCT BY THE ASSISTANT PROSECUTOR VIOLATED APPELLANT [sic] RIGHTS TO A FAIR TRIAL GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 26} In his third assignment of error, appellant alleges prosecutorial misconduct. Appellant argues the assistant prosecutor made inflammatory statements and improperly voiced personal opinions during the closing argument regarding witness credibility and appellant's guilt. *Page 8 
 {¶ 27} In order reverse a conviction based upon prosecutorial misconduct, a defendant must prove that the prosecutor's comments were improper and that they prejudicially affected the defendant's substantial rights. State v. Elmore, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon culpability of the prosecutor. State v. Hill, 75 Ohio St.3d 195, 203, 1996-Ohio-222, quoting Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940. The Ohio Supreme Court has held that prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. State v.Maurer (1984), 15 Ohio St.3d 239, 266.
 {¶ 28} Appellant directs this court to review several statements made by the prosecutor during closing argument. Specifically, appellant cites the following comments:
 {¶ 29} "I ask you which of those two narratives is reasonably true? Which of those is reasonable? The defendant's is laughable."
 {¶ 30} "The physical evidence in this case corroborates [the victim's] story. The conclusion of looking at all of that evidence, because you've been given two stories, one of them is not credible. And one of them is credible, corroborated, reasonable, detailed, consistent and against her own self-interest as an illegal alien. There is only one conclusion to draw here, that [the victim] is not making this up."
 {¶ 31} "So you're going to go back there and look at all this evidence and you're going to have two stories and you're going to weigh them and you're going to find that all the evidence is not even close. It tells you that [the victim] is a person you can believe. You can believe in this very most important affair and you can do it beyond a reasonable *Page 9 
doubt. And you can be sure of his guilt as you are of who your parents are, as sure of how you know that snow got there in your front yard. And when you come to that conclusion, you can come back out here and you tell us that he is guilty of domestic violence and rape."
 {¶ 32} "You going with him and the story he tried to tell here and the way he told it? Or you going with her, and all of the facts that we've talked about that tell you she is trustworthy?"
 {¶ 33} Appellant argues these statements are improper personal opinions regarding the credibility of appellant's girlfriend. Additionally, appellant directs the court to the following statement by the prosecutor made during closing argument, which appellant argues is inflammatory:
 {¶ 34} "You know there is a very good reason why that U-visa program is in place because without it, people like him, can have free rein. They rape, pillage and plunder a whole underclass of people in this country simply because they are illegal aliens, knowing full well that they in their perpetual fear factor and their state of paranoia are not going to go running to the police."
 {¶ 35} An attorney may not express a personal belief or opinion as to the credibility of a witness. State v. Williams (1997), 79 Ohio St.3d 1,12. Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue.State v. Jackson, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 117.
 {¶ 36} At trial, appellant's counsel made no objection to the prosecutor's statements. Accordingly, our review is limited to plain error. Plain error exists where *Page 10 
there is an obvious deviation from a legal rule which affected the defendant's substantial rights, or influenced the outcome of the proceeding. State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. An error does not rise to the level of a plain error unless, but for the error, the outcome of the trial would have been different. State v.Baldev, Butler App. No. CA2004-05-106, 2005-Ohio-2369, ¶ 12; State v.Krull, 154 Ohio App.3d 219, 2003-Ohio-4611, ¶ 38. "Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Baldev at ¶ 12, citing State v. Long (1978), 53 Ohio St.2d 91, 95. "Prosecutorial misconduct rises to the level of plain error if it is clear the defendant would not have been convicted in the absence of the improper comments." State v. Tumbleson (1995), 105 Ohio App.3d 693, 700.
 {¶ 37} In reviewing the allegedly improper credibility comments, we cannot say that defendant would not have been convicted in the absence of the comments. Two of the remarks cited by appellant are presented in the form of a question to the jury, asking the jury to decide which of the conflicting accounts is "reasonable" and "trustworthy" in light of the evidence. A prosecutor does not express an opinion about witness credibility by asking jurors to decide for themselves whether the witnesses were being truthful. State v. Davis, 116 Ohio St.3d 404,2008-Ohio-2, ¶ 235. Further, each statement clearly referenced the evidence, and did not allude to any knowledge of facts outside the record by the prosecutor. It is not improper to make comments in the context of explaining why a witness' testimony is or is not credible in light of the circumstances of the evidence, whether the prosecutor neither implies knowledge of the facts outside the record nor places his or her personal credibility in issue by making such argument. Id. at ¶ 244-247, *Page 11 
citing State v. Keene (1998) 81 Ohio St.3d 646, 666, 1998-Ohio-342.
 {¶ 38} In regards to the inflammatory comment, the prosecutor's statement was unquestionably improper and this court does not condone the prosecutor's actions.[1] However, in light of the evidence, we cannot say that appellant's conviction would be overturned absent the improper comment.
 {¶ 39} Appellant's third assignment of error is overruled.
 {¶ 40} Judgment affirmed.
WALSH, P.J. and BRESSLER, J., concur.
[1] At trial, appellant called an expert witness to explain the U-visa program to the jury and to argue that the girlfriend had a motive to fabricate the charges against appellant. The prosecutor's comment was made during closing argument in response to this evidence. *Page 1